CARR, J.
The first point made in the argument for the appellant, was, that the administrator de bonis non could not support this demand, because the first administrator by the sale of the forty-three slaves had so converted the property, that it amounted to an administration, and the covenant by which the vendees of the slaves were bound for the balance of the purchase money,would enure, not to the administrator de bonis non, but to the representative of the *first administrator. And fo'r this position the case of Wernick’s adm’r v. M’Murdo was relied on. This question might well have been raised by the absent defendants, if they had appeared and given security, before the decree, or had used their privilege to open the decree within seven years; and though they did not appear, it was proper matter to be considered, and we must presume, was considered by the court below. But it is very questionable with me, whether the home defendants can raise it. The foreign attachment had two objects, perfectly distinct, 1. to get a decree against the absent debtors for a debt claimed to be due from them; 2. to get an order against the home defendant Heffernan to pay to the plain tiff whatever sum (to the amount of that debt) he might be found to owe the absentees. With respect to the debt claimed of the absentees, the home defendant was not called on to answer., and had nothing to do with it: as to that, the plaintiff had to produce evidence of his claim, and the court, if satisfied therewith, would decree against the absentees. The home defendant was called on simply to say, whether he owed the absentees any debt, and to what amount? If he admitted that he had received property or money from them, but claimed it as his own, the court would judge upon the allegations and proofs, whether it was his or theirs: if it adjudged the debt to belong to the absentees, it would decree, that the home defendant should pay it, (or so much as was proper) to the plaintiff. Of this decree, the home defendant might complain, and take an appeal from it: but such appeal, I apprehend, would bring before the appellate court, that part of the case only which concerned the appellant: the residue would remain unappealed from, and therefore not subject to the revision of this court. That this is so, seems apparent from several considerations: 1. By what right should the home defendant be empowered to appeal for the absentees? His answer does not put in issue the justice of the plaintiff’s demand against them: he is not their ageni: he claims nothing jointly with them. That part of the decree from which he appeals, so far from *being against them, is in their favour; for the money which the home defendant claims as his, that decree decides to be theirs, and orders him to pay it towards their debt to the plaintiff. Again: how can there be an appeal as to the absent defendants, when they have never entered their appearance in the cause? The law is express, that a day is to be given to the absentees to appear, and give security for performing the decree; if they fail, the court is to take such proof as the plaintiff offers, and, if satisfied therewith, shall make such decree as shall seem just &c. 1 Rev. Code, ch. 123, $ 2, p. 474, 5. If the absentee, within seven years, shall return and appear openly, the plaintiff shall serve him with a copy of the decree; and thereupon, he may within twelve months, or if not served with the decree he may within seven years, appear in court, and petition to have the cause reheard ; and upon giving such security as the court shall require, shall be admitted to answer the bill, issue may be injoined, witnesses examined, and such other proceedings, decree &c. as shall seem just: but if the absentee shall not within twelve'months after service of a copy, or if not served, within seven years after the decree pronounced, appear as aforesaid &c. the decree, so made, shall stand absolutely confirmed against such absentee. The decree of the court of chancery in this case, was pronounced in 1813, and in 1831, we are called on to reverse it; no appearance having been entered by the absentees; no security given. Suppose the absentees within seven years had wished to appear, where must such appearance have been entered? Assuredly in the court where the decree was pronounced. And this proves that the appeal of the home defendant did not bring up their part of the case; for it could not be depending both here and there at the same time. Again : the appellant gives a bond, which is saved if he prosecutes his appeal with success. Suppose the home defendant here had proved that he owed the absentees nothing, would he not have succeeded completely, and reversed the decree in every thing which connected him? One more consideration : *the sum charged to be in the hands ^ of the home defendant belonging to the absent debtor may not amount to a tenth part of the debt due from the absentee to the plaintiff: if the appeal brings up the whole case, there ought to be security given on the appeal, to cover the plaintiff’s whole demand; for no one will deny, that if the absentees had appeared in the court below, and taken an appeal from that court, they would have had to give security to cover the whole demand against them; and yet would it not be most oppressive on the home defendant, to say that he should not be allowed to appeal, unless he gave security to cover the whole demand, when he has nothing to do with nine tenths of it? The appeal bond, in the present case, is not be-, fore us; but we see the amount in which it was directed to be taken; and that shews, that it was meant only to cover the sum which the home defendant was decreed to pay to the plaintiff. From these considerations, it is clear to me, that the case as between the plaintiff and absent defendants is not brought up by the appeal of Heffer-nan.
*417 If it were, I should have no difficulty in saying, that trying the question by the very principles established in Wernick’s adm’r ' v. M’Murdo, the administrator de bonis non might well recover against the absent defendants in the present case. This case falls within that class distinctly treated of there, where the executor has changed the property, as by investing money in the funds, transferring it from one particular stock to another, or the like, but this done for the benefit of the estate, and without intention of making the money his own, as is declared by Sayre in his answer, to have been the case here. In such cases, though the act may amount to a conversion at law, equity, looking at the quo animo, will follow the property, and consider it still unadministered.
It will be remarked, that the bill was dismissed by consent, as to Sayre the other home defendant, so that the single question before the court is this: did the chancellor err in decreeing that Heffernan should pay the money to the plaintiff, i;as so much money due from him, to the absent defendant Mather? I at first thought the decree right; in which opinion, I was probably influenced by that strong disapprobation, which every ingenuous mind must feel at the moral aspect of this whole transaction. But closer and more dispassionate examination has compelled me to change my first impression. Heffer-nan, in the sale of the hundred slaves to Mather and Kenner, acted solely as the agent of Sayre, under a written authority: he received the first payment in that character : and as there was no fraud practised by him towards Mather and Kenner (whatever he might have meditated towards the estate of Grymes) and as also, immediately on his return, he accounted with Sayre, to his satisfaction, for the monej’ received, he could not in any point of view’, be considered as having in his hands money or prop-ertj’ belonging to Ma.ther and Kenner or either of them. It is not material, therefore, to consider, whether, if the joint funds of Mather and Kenner had been in his hands, the interest of Mather in that fund could have been condemned to pay the debt of Mather and Duncan.
Upon the whole, I conclude, that the decree should be reversed, and the bill dismissed.
The other judges concurred.